LittletoN, Jvdge,
delivered the opinion of the court:
The contract between plaintiff and the defendant, represented by the Quartermaster Corps, United States Army, *294 was dated July 1, 1920, and was to continue in force until June 30, 1921, unless sooner terminated by the. Quartermaster General in tbe public interest. The contract was for a total of 30,000 tons of bituminous coal, 10,000 tons of which was to be over 6" screen and 20,000 tons nut through 2y2", to be furnished by plaintiff to Camp Funston, Kansas, in, accordance with such “Schedule of Delivery” calls as might be issued by the - supply officer at Camp Funston prior to June 30, 1921, and in accordance with shipping directions to be furnished by the Depot Quartermaster at St. Louis, Missouri. The contract also provided that at its expiration any undelivered coal not covered by schedule of delivery calls furnished by the supply officer at Camp Funston would be automatically canceled. This provision in Schedule A of the contract had no reference to the termination of the contract under section 2, but had reference only to the expiration of the contract by its terms. The contract in question was a standard form contract No. 108C of the Quartermaster Corps approved and authorized October 9, 1918, and the specific provisions thereof relating to the kind and- quantity of coal, the unit price, the total contract price, and delivery thereof were set forth in that portion of the contract designated “Schedule A.”
The documents used by the supply officer at Camp Funston on which he entered from time to time schedules of delivery calls for coal, which were furnished to plaintiff through .the Depot Quartermaster at St. Louis, Mo., with shipping directions, were printed form “Q. M. C. Form 108G,” authorized July 20, 1918, for use under the standard form contract for the furnishing of supplies and materials on which the supply officer filled in the schedule for the delivery, as needed, of the supplies or materials covered by the contract.
Plaintiff contends, first, that the total of 30,000 tons of coal specified in the contract was called for by the supply officer at Camp Funston within the meaning of the provision for schedule of delivery calls in Schedule A of the contract and that shipping directions therefor were furnished by the Depot Quartermaster at St. Louis, Mo., and that the defendant breached the contract- on December 21,1920, by refusing *295 to take deliveries and pay for 12,499.90 tons of nut coal and 6,538.85 of lump coal subsequent to January 31, 1921; and, second, that the contracting officer did not give the required fifteen days’ notice and th'at the Quartermaster General did not terminate the contract in accordance with section 2 thereof. Finding 13.
It is clear from the record in this case that the supply officer at Camp Funston did not issue and deliver to plaintiff schedule of delivery calls for the entire quantity of 30,000 tons of coal specified in the contract within the meaning of the provisions of paragraph 2 and Schedule A of the contract. The entry by the supply officer on the printed forms of “Schedule of Delivery” calls of the total tonnage of coal specified in the contract under the heading “Quantity” in some of the calls issued by him was not a “Schedule of Delivery” call for the entire amount of coal. Under the printed heading “Point of Delivery and Schedule” the supply officer, in the early calls, which were at plaintiff’s request modified by subsequent calls, issued schedule of delivery at the rate of a certain number of cars a month. In later calls he furnished a schedule of delivery for a certain number of cars a week, and in subsequent calls and in the calls in effect at the time deliveries were suspended under directions from the contracting division of the office of the Quartermaster General, the supply officer furnished plaintiff with schedule of delivery calls month by month for a certain number of cars per day. If the contention of the plaintiff that the entry by the- supply officer under the heading “Quantity” of the printed form of schedule of delivery calls of the total tonnage of each class of coal specified in the contract was the furnishing by such supply officer of a “Schedule of Delivery Call” for that amount within the meaning of the contract, the contracting officer issued calls to the plaintiff for 95,650 tons of coal which was 65,650 tons in excess of the amount specified in the contract. The entry on the schedule of delivery forms of information other than as to the schedule of delivery of the coal was for information purposes only. The schedule of delivery of the coal, ns specified by the supply officer, was the important and *296 controlling feature of the contract. The facts show that the Government accepted and paid for all coal for which the supply officer at Camp Funston furnished .the plaintiff with schedules of delivery. Moreover, this contention of the plaintiff is not important in this case since the evidence conclusively shows that the Quartermaster General terminated the contract under and in accordance with the provisions of section 2 thereof. Plaintiff relies upon the cases of Sinclair Goal Co. v. United States, 65 C. Cls. 704, and Midland Goal Co. v. United States, 65 C. Cls. 717, but the record in this case distinguishes the facts found by the court in those cases, and the facts here disclosed show that plaintiff is not entitled to recover.
The evidence shows that the letter of the Depot Quartermaster at St. Louis, Mo., dated December 21, 1920, to plaintiff (finding 10), which plaintiff contends was a breach of the contract, was written by the Depot Quartermaster pursuant to instructions issued by the War Department to abandon Camp Funston and that such letter was written as the agent of the contracting officer. But in any event the evidence shows that the Depot Quartermaster at St. Louis did not cancel the contract but merely gave plaintiff notice to suspend deliveries awaiting action by the Quartermaster General with reference to termination of the contract. At the time the notice of December 21, 1920, was sent to plaintiff by the Quartermaster at St. Louis, Capt. Hal T. Vigor was the procuring, purchasing, and contracting officer of the Quartermaster Corps, and instructions from.- the Quartermaster’s Department to discontinue further purchases and shipments of supplies to Camp Funston had been issued by reason of the transfer therefrom of the 7th Division of the Army. Subsequently, as shown by finding 13, the Quartermaster General determined that the public interest required the termination of: plaintiff’s contract and he, thereupon, terminated the same under the authority contained in section 2 after his office had determined that the undelivered portion of the total tonnage of coal specified in the contract could not be diverted or used by the Govermnent at some other army camp:
*297 At the time of the termination of the contract under section 2, ho conditions existed entitling plaintiff to any compensation under the provisions of subsections (a), (b), (c), or (d) of section 2. Prior, to the making of the contract between plaintiff and the defendant, and during the performance thereof and subsequently, plaintiff was the exclusive selling agent of the Adair County Coal Company, the owner of mines located at Youngstown, Missouri, from which plaintiff obtained the coal with which to fulfill its contract with the defendant. No recovery can be had here by reason of any advances made by plaintiff to the Adair County Coal .Company. None of the undelivered portion of coal specified in plaintiff’s contract was mined at the time the deliveries were suspended and the contract canceled. In its arrangement with plaintiff, so far as the contract in suit was concerned, the Adair County Coal Company, prior to the time of delivery of any coal under the contract, accepted the contract between plaintiff and the defendant.
The petition must therefore be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.